IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL M. PRUSKY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| ALLSTATE LIFE INSURANCE COMPANY, | : | No. 09-cv-05156 |
| Defendant | : | |

**M E M O R A N D U M   A N D   O R D E R**

Ditter, J.                                                                                                       September 30, 2010

This case comes before me on the motion to dismiss of the defendant, Allstate Life Insurance Company, pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiffs, Paul M. Prusky, Paul M. Prusky Roth IRA, Paul M. Prusky IRA, and Steven Prusky (collectively, "the plaintiffs") filed a six-count complaint based on Allstate's restriction of transfers related to the parties' contract for Flexible Premium Deferred Variable Annuities. Count I seeks injunctive relief, specific performance, and a declaration that plaintiffs are entitled to make daily transfers with no monetary limitations. Count II is entitled "Equitable Estoppel" and seeks to estop Allstate from preventing unrestricted transfers based on the plaintiffs' reliance on Allstate's representations related to daily transfers. Count III seeks recovery under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. ("UTPCPL"). Count IV is entitled "Insurance Company Bad Faith" and alleges Allstate "acted in bad faith toward their insured" pursuant to 42 Pa. Cons. Stat. § 8371. In Counts V and VI plaintiffs allege that Allstate's representations regarding "unrestricted daily transfers" were false and constitute fraud and negligent misrepresentation.

For the reasons that follow, I will deny Allstate's motion as to all but Counts II and IV of the complaint.

I.  **<u>FACTS</u>**[1]

The plaintiffs purchased seven Variable Annuity Account II Certificates ("Annuity Contracts") from Northbrook Life Insurance Company, a predecessor of Allstate, on April 27 and 28, 1999.[2] The plaintiffs invested money in the Annuity Contracts by the separate Northbrook Variable Annuity Account II ("Variable Account"). The Annuity Contracts permit the value invested to be apportioned in various subaccounts at the direction of the plaintiffs. It is uncontested that at the time of purchase, and for a significant period thereafter, the plaintiffs were allowed to transfer assets between and among the subaccounts as frequently as once daily to take advantage of market fluctuations. The plaintiffs allege that the frequent ability to transfer funds was "essential" to plaintiffs' purpose in obtaining the contracts.

Prior to the purchase of the annuity contracts, the plaintiffs asked certain Allstate representatives about the ability to make frequent transfers among subaccounts. The plaintiffs proposed binding terms by way of a Special Instructions Attachment relating to unrestricted transfers, the right to change owners, and the right to utilize an agent for transfers, as well as the ability to place transfers with a single set of instructions and permission to effect transfers by telephone or facsimile. Allstate responded by stating it could not sign off on any changes to the contract, but expressly noted that the plaintiffs' requests regarding transfers "were clearly

---

[1] These facts, unless otherwise cited, are taken from the plaintiffs' complaint and accompanying exhibits.

[2] Northbrook is referred to interchangeably as Allstate in this opinion.

indicated in the contract" and the requested methods for effecting the transfers were "common administrative practices." The plaintiffs also contacted "Renee," an Allstate employee, and Dave Marcucci, an Allstate supervisor. Renee confirmed that the procedures listed in the attachment were all standard and that "frequent transfers were not an issue." Similarly, Mr. Marcucci told the plaintiffs "that frequent transfers . . . would not be a problem."

Two of the seven Annuity Contracts were issued with an Amendatory Endorsement for Transfer Limitations, while the other five were not. However, Allstate notified the plaintiffs by letter dated September 16 , 1999, that the Amendatory Endorsement was sent in error and should be discarded.

When the Annuity Contracts were signed, a 1998 prospectus was in effect which did not provide any language placing limitations on the transfer rights of owners. Beginning in May 1999 and continuing through May 2003, the yearly prospectuses provided, in part, "[f]or Contracts issued after May 2, 1999, we reserve the right to limit transfers among the Variable Sub-Accounts if we determine, in our sole discretion, that transfers by one or more Contract owners would be to the disadvantage of other Contract owners." In 2004, however, the prospectus stated that Allstate could impose transfer limitations on contracts from any year.

In a November 6, 2002 letter, William B. Borst, III, then Senior Vice President of Northbrook, notified the plaintiffs that their telephone transfer privileges would be restricted, but no restrictions were imposed at that time. In a December 10, 2002 letter, Allstate notified the plaintiffs that one subaccount was closed to new premiums or transfers and that it was restricting new premium allocations and transfers into three other subaccounts to a maximum of $50,000 per day. Allstate began to impose the restrictions outlined in this letter on that same day by

3

denying the plaintiffs' transfer requests.

The plaintiffs filed this action in the Court of Common Pleas of Montgomery County, Pennsylvania[3] and Allstate timely removed the matter to this Court on November 6, 2009, based on diversity of citizenship between the parties. The plaintiffs contend that Allstate is not permitted to impose transfer limitations under the Annuity Contracts. They argue that they were induced to purchase the Annuity Contracts by representations of Allstate employees that transfers would be unrestricted. They assert that Allstate understood that they would not have purchased the annuities without unlimited daily transfers among subaccounts and the ability to make transfers by telephone or fax. Furthermore, they point to Allstate's September 16, 1999 letter, the pre-2004 prospectuses, and the nearly four years of unrestricted transfers as evidence that Allstate did not have the right to impose transfer limitations. They allege that they reasonably relied upon these representations and the course of performance by making premium payments and adding funds to the contracts' balance.

Allstate has moved to dismiss all counts of the complaint, asserting the Amendatory Endorsement to the Master Policy for Transfer Limitations properly amended the Master Policy and permits Allstate to impose transfer restrictions.

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. I must accept as true the factual allegations contained in the complaint and all reasonable inferences drawn therefrom and view the facts in the light most

---

[3] Plaintiffs filed a Praecipe for Writ of Summons on November 12, 2008, and filed their complaint on September 3, 2009.

favorable to the plaintiff. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

III.  **DISCUSSION**

    A.  **Breach of Contract Claim**

To state a claim for breach of contract under Delaware law[4] the plaintiffs must allege: (1) the existence of an enforceable contract, whether it be express or implied; (2) a breach of a contractual obligation; and (3) resulting damages. *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Each of these elements must be pled, even when seeking equitable remedies. *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 883 (Del. Ch. 2009). The only element at issue is whether the plaintiffs have properly pled a breach of a contractual obligation.

---

[4] Jurisdiction over this matter rests on diversity of the parties. 28 U.S.C. § 1332(a)(1), (c)(1). In a diversity action, the choice-of-law rules of the forum state apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). Accordingly, I will apply Pennsylvania's choice-of-law rules. Pennsylvania has adopted Section 187 of the Restatement (Second) of Conflict of Laws and "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Each of the Certificates provides: "This Certificate is issued in the state of Delaware and is governed by Delaware law." (Compl. Ex. A at 1.) Allstate is incorporated in Delaware, all of the Certificates were issued in Delaware and are to be governed by its laws, and Pennsylvania's interest in the determination of this issue is no greater than Delaware's. Therefore, the choice-of-law provision in the Certificates is enforceable and I will apply Delaware law to the breach of contract claim.

Allstate argues that the plaintiffs' claims based upon an alleged breach of contract are invalid because the contracts at issue expressly permit Allstate to limit transfers. (Allstate Mot. to Dismiss at 3.) Plaintiffs assert, however, that the transfer restrictions on which Allstate relies "w[ere] not a part of the annuity contracts purchased by Plaintiffs." Plfs. Opp. Br. at 2; Plfs. Surreply Br. at 2. Thus, construing the facts in the light most favorable to the plaintiffs, I find the plaintiffs have alleged sufficient facts, which if proven true, would support a finding that the Master Policy did not contain the Transfer Limitations Endorsement, five of the seven contracts contained no Amendatory Endorsement, and the inclusion of the Amendatory Endorsement with the remaining two contracts was erroneous and did not alter the terms of the contract. The plaintiffs have therefore properly pled a breach of contract upon which their claims for injunctive relief, specific performance and declaratory judgment are based and Allstate's motion to dismiss Count I of the complaint will be denied.

### B. Estoppel Claim

In Count II, Plaintiffs raise a claim of "Equitable Estoppel" asserting they justifiably relied to their detriment on Allstate's representations that it would allow "unrestricted daily Subaccount transfers." In the plaintiffs' opposition briefs, however, they defend their claim on the basis of *promisory estoppel* and assert that Delaware law applies. (Pl.'s Opp'n Br. 10.) Plaintiffs' claim fails whether it is viewed as equitable estoppel or promissory estoppel under both Pennsylvania and Delaware law, and the claim will therefore be dismissed.[5]

---

[5] Courts applying Pennsylvania law have construed nominal claims of equitable estoppel as claims of promissory estoppel where elements of the latter are properly pled in the complaint. *See*, *e.g.*, *Jodek Charitable Trust, R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 477-78 (E.D. Pa. 2006); *Weiland v. DeFrancisis*, 28 Pa. D. & C.4th 129, 133 (Pa. Com. Pl. Jan. 8, 1996).

Under Pennsylvania law, "[e]quitable estoppel is not a separate cause of action." *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). Promissory estoppel, by distinction, may be a separate cause of action, but where "the parties form[ ] an enforceable contract, relief under a promissory estoppel claim is unwarranted." *Id*. (applying Pennsylvania law). Just as in Pennsylvania, Delaware law does not apply the doctrines of equitable and promissory estoppel where an enforceable contract supported by consideration exists. *Genencor Intern., Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000). Here, there is no question that the contracts at issue were supported by consideration. Furthermore, the estoppel doctrines are to be employed only to prevent manifest injustice. *Cardamone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1232 n.4 (Pa. Super. Ct. 1978); *Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*, No. 19209, 2002 Del. Ch. LEXIS 91, at *21 n.26 (Del. Ch. July 9, 2002). The plaintiffs here may seek relief through other, more appropriate avenues to avoid any such injustice. Therefore, Allstate's motion to dismiss Count II of the complaint will be granted.

### C. Insurance Company Bad Faith Claim

Pennsylvania's bad faith insurance statute provides specific remedies "[i]n an action *arising under an insurance policy*, if the court finds that the *insurer* has acted in bad faith toward the *insured*." 42 Pa. C.S. § 8371 (emphasis added). "Bad faith" is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. Pa. 2005) (quoting *Terletsky v. Prudential Property and Casualty Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1984). "Ultimately, in order to recover on a bad faith claim,

---

Accordingly, I shall construe Count II of the plaintiffs' complaint as a claim under promissory estoppel.

the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.*, *quoting Keefe v. Prudential Property & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000). The Pennsylvania Supreme Court has held that "[t]he bad faith insurance statute . . . is concerned with 'the duty of good faith and fair dealing in the parties' contract and the manner by which an insurer discharge[s] its obligation of defense and indemnification in the third party claim context or its obligation to pay for a loss in the first party claim context.' . . . *It applies only in limited circumstances . . . and it only permits a narrow class of plaintiffs to pursue the bad faith claim against a narrow class of defendants*." *Ash v. Continental Ins. Co.,* 593 Pa. 523, 530-31 (Pa. 2007) (emphasis added).

Here, plaintiffs' claim rests on allegations that Allstate breached contracts for annuities, not insurance. While annuities contracts are regulated by the Pennsylvania Insurance Commission, they are not insurance policies. *See In re: Custom Coals Laurel*, 258 B.R. 597, 601-02 (W.D. Pa. Bankr. 2001) (finding "Annuities are not insurance policies" and providing examples of differences between annuities and insurance policies)*; NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins.*, 513 U.S. 251, 255 (1995) (deferring to state Comptroller's conclusion that national banks have authority to broker annuities because "annuities do not rank as insurance" and are more like investments); *Smith v. John Hancock Ins. Co.*, No. 06-3876, 2008 U.S. Dist. LEXIS 66912, *15-16 (E.D. Pa. Sep. 02, 2008) (declining to extend "reasonable expectations" doctrine to annuity contracts because "it is well established under Pennsylvania law that annuity contracts and insurance contracts are distinct animals"). The narrow tort provision of § 8371 extends only to the insured and does not make bad faith

8

claims available to annuitants. *See e.g., Cates Construction, Inc. v. Talbot Partners*, 980 P.2d 407, 420-423 (Cal. 1999) (declining to extend tort of bad faith from insurance claims to surety contract and discussing purpose of bad faith remedy). Thus, Allstate's motion to dismiss Count IV is granted and plaintiffs' claim for insurance bad faith will be dismissed.

> **D.** **Claims for Fraud and Negligent Misrepresentation.**[6]

To successfully state a claim of fraud, the plaintiffs must allege that they justifiably relied, to their detriment, on a material misrepresentation that the defendant made where the defendant knew it was false or acted recklessly with respect to whether it is true or false and intended that the plaintiffs would be induced into entering the contract by relying on it. To state a claim of negligent misrepresentation, the defendant does not need to have knowledge that its representations are false, but must have failed to exercise reasonable care in determining their accuracy. These facts have been sufficiently pled to survive a motion to dismiss. *See e.g.,* Compl. ¶¶ 32-39, 60, 64-66.

Allstate is correct that the gist of the action doctrine bars tort claims arising solely from a contract between the parties in both Delaware and Pennsylvania, and may ultimately prevail on this claim. *See e.g, U.S. Claims, Inc. v. Saffren & Weinberg, LLP*, 2007 U.S. Dist. LEXIS 88022 (E.D. Pa. Nov. 29, 2007). Nonetheless, dismissal at this stage is premature as plaintiffs have properly alleged claims of negligent misrepresentation and fraud and are permitted to take

---

[6] There is no conflict of law with respect to plaintiffs' fraud or negligent misrepresentation claims. *Compare Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994) (setting forth elements of negligent misrepresentation claim) *with Gallagher v. E.I. DuPont De Nemours and Co.*, No. 06C-12-188, 2010 Del. Super. LEXIS 194, *16-17 (Del. Super. Ct. Apr. 30, 2010) (same); *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (setting forth elements of fraud claim) *with Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000) (same). Pennsylvania law applies.

discovery in support of their allegations. Allstate's motion to dismiss Counts V and VI of plaintiffs' complaint will be denied.

  E. **Unfair Trade Practices (UTPCPL) Claim**

To properly state a claim under the UTPCPL, the plaintiffs must allege: (1) a false misrepresentation; (2) justifiable reliance; and (3) a suffered loss caused by the reliance. *Cehula v. Janus Distributors, LLC*, No. 07-00113, 2008 U.S. Dist. LEXIS 56406, *19-20(W.D. Pa. July 23, 2008) (citing *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 201 (Pa. 2007)). The plaintiffs allege that Allstate imposed trading restrictions after representing that it would not impose such restrictions. (Compl. ¶¶ 88-89; Pl's Opp'n Br. at 10-11, n.9) They contend that this fraudulent and deceptive conduct constitutes unfair or deceptive acts or practices under the UTPCPL, 73 P.S. § 201-2(4)(v), (ix), (xxi). (*Id.* at ¶¶ 91-93.) The plaintiffs clarify that their UTPCPL claim "is based upon Allstate's misrepresenting that the terms of the Transfer Limitations Endorsement was not part of the contract Plaintiffs entered into." (Pl.'s Surrebuttal 3 n.3.)

Allstate's motion to dismiss Count III will be denied for the same reasons set forth above related to the claims for negligent misrepresentation and fraud.

  IV. **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss must be denied with respect to Counts I, III, V, and VI of the plaintiffs' complaint, and granted with respect to Counts II and IV.

An appropriate order follows.