IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL M. PRUSKY, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | |
| ALLSTATE LIFE INSURANCE COMPANY, | : | No. 09-cv-05156 |
| Defendant | : | |

## **M E M O R A N D U M  A N D  O R D E R**

Ditter, J.                                                                                                                  May 19, 2011

Plaintiffs bought annuities from the defendant with the ability to direct the purchase and sale of the mutual funds in which the annuity contracts were invested. For several years, defendant honored the plaintiffs' market-timing trade orders, but then refused to do so. Plaintiffs contend that the defendant thereby breached the annuity contracts and seek lost-profit damages. The matter is now before me on the defendant's motion for partial summary judgment to limit the time frame during which the alleged damages were incurred.

For the reasons that follow, I will grant the defendant's motion.

**RELEVANT FACTS**

The plaintiffs purchased seven Variable Annuity II contracts from Allstate, but used just three policies to trade money among different sub-accounts: 325934, 325937, and 326039. (Jt. Stmt. Facts ¶ 4.) By the Spring of 2005, the sub-accounts were invested in the following mutual funds: Morgan Stanley Variable Investment Series, Putnam Variable Trust, Franklin Templeton Variable Product Trust, Alliance Bernstein Variable Products Annuity Fund, Inc., AIM Variable

Insurance Funds, Inc., and Van Kampen Life Investment Trust (collectively "VA II Funds"). *(Id*. ¶ 3.)

The SEC adopted Rule 22c-2 (17 C.F.R. § 270.22c-2) on March 11, 2005. As accurately summarized by the parties, Rule 22c-2 "requires financial intermediaries that submit orders to mutual funds on behalf of their customers to enter into shareholder information agreements with the mutual fund companies and to follow instructions from the fund companies to restrict or prohibit purchases or exchanges of fund shares that violate policies established by the fund to eliminate or reduce any dilution of the value of the outstanding securities issued by the fund." (Jt. Stmt. Facts ¶ 7.) *See also* 17 C.F.R. § 270.22c-2(c)(5).

Allstate did not enter into any Shareholder Information Agreements, pursuant to Rule 22c-2, until April 2007. (Jt. Stmt. Facts ¶ 11; *id.* at Ex. E.)

In October of 2005, the VA II Funds "instructed Allstate to prohibit Plaintiffs from making further purchase payments or transfers using Policy numbers 325934, 325937, and 326039." (Jt. Stmt. Facts ¶ 8.) Allstate did not request that any of the VA II Funds permit short-term trading.

In 2005, there were mutual funds available that affirmatively permitted such trading, including ProFunds, Rydez Variable Trust, and Potomoc Insurance Trust. (*Id*. at ¶¶ 13-14.) Allstate did not make available to plaintiffs for investment in the annuity contracts any mutual funds that permitted short-term trading. (*Id*. at ¶ 15.)

**DISCUSSION**

Allstate asserts that the plaintiffs cannot recover damages after October 2005 because the the VA II Funds, pursuant to Rule 22c-2, barred the type of trading in which the plaintiffs were

2

involved. As noted above, Rule 22c-2 requires intermediaries[1] to "[e]xecute any instructions from the fund to restrict or prohibit further purchases or exchanges of fund shares by a shareholder who has been identified by the fund as having . . . violate[d] policies established by the fund for the purpose of eliminating or reducing any dilution of the value of the outstanding securities issued by the fund." 17 C.F.R. § 270.22c-2(c)(5)(ii).

The Pruskys argue that they are entitled to damages to the present day because: (1) Allstate was not obligated to follow the funds' instructions restricting plaintiffs' trades; (2) Allstate was prohibited from sharing information with the funds until the April 2007 Shareholder Information Agreements were signed; and (3) Allstate was obligated to provide mutual funds that allowed market timing. I find each of these arguments fail for the reasons set forth below.

---

[1] Plaintiffs contested Allstate's characterization of itself as a "financial intermediary." (Plfs. Obj. to Def.'s Stmt. of Additional Uncontested Facts, Dkt. 54.) The plaintiffs did not, however, raise the issue in their opposition briefs or at oral argument. A "financial intermediary" is defined as "any broker, dealer, bank or other entity that holds securities of record issued by the fund, in nominee name; [or] a unit investment trust or fund . . . " 17 C.F.R. § 270.22c-2(c)(1).
I find that Allstate is a financial intermediary for the purposes of Rule 22c-2. My decision is in line with many courts that have similarly found insurance companies providing annuity contracts to be financial intermediaries. *See e.g., Prudential Ins. Co. of America v. Prusky*, No. 04-462, 2008 U.S. Dist. LEXIS 26330, *70 (E.D. Pa. Mar. 31, 2008) (finding Prudential Life Insurance Company to be a financial intermediary where it held "the shares of the mutual funds" under a flexible premium survivorship variable universal life contract); *Prusky v. ReliaStar Life Ins. Co.*, 474 F. Supp. 2d 703, 705 (E.D. Pa. 2007) (finding ReliaStar to be a financial intermediary where it issued policies permitting investments in a unit investment trust); *Helft v. Allmerica Fin. Life Ins. & Annuity Co.*, No. 1:03-CV-35, 2009 U.S. Dist. LEXIS 24862, *33 (N.D.N.Y. Mar. 26, 2009) (finding Allmerica to be a financial intermediary under Rule 22c-2 where it issued variable life insurance policies). *See also*, SEC Proposed Amendments to Rule 22c-2, Release No. IC-27255 at 43 (Feb. 28, 2006), available at http://www.sec.gov/rules/proposed/ic-27255.pdf (noting that "approximately 7000 intermediaries" might be affected by the information sharing provisions of Rule 22c-2, including "insurance companies sponsoring registered separate accounts organized as unit investment trusts").

### 1. Obligation to Follow the Funds' Instructions

Relying on *Prusky v. ReliaStar Life Ins. Co.*, 474 F. Supp. 2d 695 (E.D. Pa. 2007), the plaintiffs argue that Allstate breached its contractual duty by failing to at least attempt to place the trades. In *ReliaStar*, the court held: "when ReliaStar has received specific instructions from a fund to prohibit or restrict trading, the contract allows ReliaStar to condition its performance on compliance with those instructions. ReliaStar *fails to demonstrate, however, that it ever received any instructions to restrict the Plan's trading.*" *Id*. at 700 (emphasis added). The Court further clarified that the plaintiffs were "entitled to complete performance from ReliaStar until such conditions *are actually imposed* by the funds themselves." *Id.* at 701 (emphasis in original).

Here, unlike in *Reliastar*, it is undisputed that, as of October 2005, the funds "instructed Allstate to prohibit plaintiffs from making further purchase payments or transfers." (Jt. Stmt. Facts ¶ 8.) Plaintiffs' assertion that Allstate was nonetheless obligated to place the trades with the funds despite explicit instructions *not* to do so is without merit. For these same reasons, the plaintiffs' cannot establish a claim based on the assertion that Allstate was required to place plaintiffs' trades after the Shareholder Information Agreements were signed in April 2007 "to see if such trades would comply with the then frequent trading policies of the mutual funds" (Pls.' Sur-rebuttal at 5). Plaintiffs' assertion that Allstate made a speculative presumption "that mutual funds would have refused Plaintiffs' trades in 2007" (*id.* at n.11) cannot prevail in the face of explicit instructions from the funds, as of October 2005, to bar such trades (Jt. Stmt. Facts ¶ 8).

### 2. Sharing Information Prior to Shareholder Information Agreements

The plaintiffs assert that because Allstate did not enter into any formal, written Shareholder Information Agreements until April 2007, a fact conceded at oral argument, Allstate

was not permitted to impose trade restrictions pursuant to Rule 22c-2 in 2005. (Pls.' Opp. at 20; Pls.' Sur-rebuttal at ¶ 3.) Plaintiffs' argument ignores the Rule's purpose and contradicts the SEC's clearly stated reasoning for requiring a written agreement.

Rule 22c-2 was implemented to "provide[] funds with an important new tool to monitor trading activity in order to detect market timing and to assure consistent enforcement of their market timing policies." Mutual Fund Redemption Fees, 70 FR 13328 at IV(A)(Mar. 18, 2005). The SEC explained the Rule would "allow a fund to deter, and provide for reimbursement for the costs of, short-term trading in fund shares. . . . Rule 22c-2 also is designed to enable funds to monitor the frequency of short-term trading in omnibus accounts and take steps, where appropriate, to respond to this trading . . ." *Id*.

The SEC clearly stated that a written agreement was required not to preserve the confidentiality of the trader, but to "enable funds to obtain the information that they need to monitor the frequency of short-term trading in omnibus accounts and enforce their market timing policies." *Id*. at II.B (Mar. 18, 2005). The Shareholder Information Agreements are required "so that the fund can maintain a record of the agreement that Commission examination staff can review." *Id.* at II.B. n.40. *See also*, *id*. at II(C)(3) ("The recordkeeping requirement is designed to assist *our examination staff in assessing compliance* with the new rule."); *id*. at IV(A) ("The recordkeeping requirements . . . are designed to *assure the documentation* of the fund's agreement with its intermediaries concerning the availability of shareholder identity and transaction information in omnibus accounts. These records will *assist our examination staff in determining compliance* with the rule."); *id*. at VI (stating the retention of written agreements "is necessary for *our staff* to use in its *examination and oversight program*.") (emphasis added).

5

Plaintiffs' stress there was no Shareholder Information Agreement signed until April 2007, when the Rule became effective. However, the Rule was promulgated in March of 2005, putting Allstate and others on notice that such information sharing would soon be required. There was nothing in the Rule that kept Allstate from sharing information with the funds absent such an agreement prior to the Rule's effective date. Instead, the Rule prohibited the financial intermediary from purchasing securities issued by the fund "in nominee name or on behalf of others" without a Shareholder Information Agreement.

Furthermore, Allstate and the VA II Funds amended earlier agreements to permit the sharing of information required by Rule 22c-2 well before the Shareholder Information Agreements were signed. For example, Allstate's agreement with Franklin Templeton Variable Insurance Products Trust was amended on May 3, 2004 to acknowledge that market-timing poses a significant risk to other shareholders, to authorize procedures and actions "to reduce, discourage, restrict or eliminate such trading and/or market timing activity," and to obligate Allstate to assist the fund in restricting market timing activity. *(*Amendment to Participation Agreement with Franklin Templeton at ¶ 3, Ex. A to Stmt. of Facts.) Confidentiality was ensured through an agreement to limit disclosure of nonpublic personal information of contract owners like the plaintiffs. *(Id*. at ¶ 6; *see also,* Amendment No. 2 to Participation Agreement By and Among AIM Variable Insurance Funds, Inc. and Northbrook Life Ins. Co. (Apr. 29, 2005) (adding a section entitled "Market Timing" requiring Allstate to notify the fund of any pattern of market timing and upon request of the fund to "furnish information as may be necessary or desirable to review the possible existence and extent of 'market timing' by any Contract owner").)

The written agreement requirement is for the benefit of the funds, the financial intermediaries like Allstate, and the SEC. If Allstate and the funds proceeded from 2005 through 2007 without a Shareholder Information Agreement, that fact does not benefit the plaintiffs. As noted above, although the Shareholder Information Agreement requirement was not effective until April 2007 and Allstate did not sign such agreements until then, nothing barred Allstate from providing information to the funds in the meantime.

### 3. Providing Funds That Permit Market Timing

The "Plaintiffs' position that the Annuity Contracts between them and Allstate required Allstate to provide access to mutual funds that would allow the [Plaintiffs'] type of frequent trading" ( Pls.' Sur-rebuttal. Br. ¶ 4) is not supported by any record evidence or citation and the plaintiffs failed to point to any such support at oral argument.

Indeed, as acknowledged by the plaintiffs, Allstate explicitly reserved "the right, subject to applicable law, to make additions to, deletions from, or substitutions for the mutual fund shares underlying the sub-accounts of the variable account." (Ex. A to Compl. at 10; Pls.' Opp. Br. at 13.) Allstate further "reserve[d] the right to establish additional sub-accounts of the variable account, each of which would invest in shares of another mutual fund." The agreement permits the plaintiffs only to "instruct [Allstate] to allocate purchase payments to such sub-accounts, subject to any terms set by [Allstate] or the mutual fund." The agreement is completely void of any obligation on the part of Allstate to provide specific funds and it grants no power to the plaintiffs to select, or even to propose, a mutual fund to be included in the sub-accounts. Therefore, even assuming that funds existed that would allow market-timing in the period in question, there was no obligation on Allstate to provide such funds.

**CONCLUSION**

There is no dispute that by the time Allstate prohibited the plaintiffs from making purchases or transfers among the sub-accounts, which is the only basis for the plaintiffs' claim of damages, that all of the VA II Funds had instructed Allstate to prohibit the plaintiffs' market-timing activity. There is no reason why Allstate should not have followed these instructions from the VA II Funds, no merit to the assertion that a Shareholder Information Agreement was required in order for Allstate to relay information to, or follow the instructions of, the VA II Funds, and Allstate was not required to include any specific mutual funds in the sub-accounts. The plaintiffs' are therefore barred from recovering damages for the period following October 17, 2005.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL M. PRUSKY, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE LIFE INSURANCE COMPANY | : | NO. 09-CV-5156 |

**O R D E R**

AND NOW, this 19th day of May, 2011, upon consideration of Defendant Allstate Life Insurance Company's motion for partial summary judgment as to Plaintiffs' claim for damages allegedly incurred after October 2005, and the plaintiffs' opposition, IT IS HEREBY ORDERED that Defendant's Motion is GRANTED and that Plaintiff is not entitled to recover any lost profit or other damages in this lawsuit for the period after October 17, 2005.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., J.